Slip Op. 15-101

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **KAM KIU ALUMINUM PRODUCTS SDN. BHD. AND TAISHAN CITY KAM KIU ALUMINUM EXTRUSION CO. LTD.,** <br><br>   Plaintiffs, <br><br>   v. <br><br> **UNITED STATES,** <br><br>   Defendant, <br><br>   and <br><br> **ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,** <br><br>   Defendant-Intervenor. | Before: Timothy C. Stanceu, Chief Judge <br><br> Court No. 13-00403 |

<u>OPINION</u>

[Rejecting a challenge to a final scope ruling issued by the International Trade Administration, U.S. Department of Commerce]

Date: September 3, 2015

   *William E. Perry*, Dorsey & Whitney LLP, of Seattle, WA, for plaintiffs Kam Kiu Aluminum Products Sdn. Bhd. and Taishan City Kam Kiu Aluminum Extrusion Co. Ltd. With him on the brief was *Emily Lawson*.

   *Reginald T. Blades, Jr.*, Assistant Director, and *Tara K. Hogan*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant United States. With them on the brief were *Stuart F. Delery*, Assistant Attorney General, and *Jeanne E. Davidson*, Director. Of counsel on the brief was *David P. Lyons*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

   *Robert E. DeFrancesco, III*, Wiley Rein LLP, of Washington, D.C., for defendant-intervenor Aluminum Extrusions Fair Trade Committee. With him on the brief was *Alan H. Price*.

   **Stanceu, Chief Judge:** Plaintiffs Kam Kiu Aluminum Products Sdn. Bhd. and Taishan

City Kam Kiu Aluminum Extrusion Co. Ltd. (collectively,"Kam Kiu") challenge a final

determination ("Scope Ruling") by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") that certain merchandise exported to the United States by Kam Kiu is within the scope of antidumping and countervailing duty orders (the "Orders") on aluminum extrusions from the People's Republic of China ("China"). Kam Kiu is a Chinese producer and exporter of the merchandise at issue in this case, which consists of aluminum-alloy articles intended for use after importation as component parts in the manufacturing of elastomeric aluminum bushings for automotive applications. Before the court is Kam Kiu's motion for judgment on the agency record, in which Kam Kiu seeks a determination that the Scope Ruling is unlawful and an order remanding the matter to Commerce. Defendant United States and defendant-intervenor Aluminum Extrusions Fair Trade Committee ("AEFTC"), petitioner in the antidumping and countervailing duty investigations, oppose Kam Kiu's motion.

Because the Scope Ruling reasonably construed the scope language of the Orders to include the merchandise at issue in this case, and because plaintiffs are unable to demonstrate the reasonableness of a contrary construction, the court denies plaintiff's motion.

## I. BACKGROUND

Commerce published the Orders on May 26, 2011. *See Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*").

On June 25, 2013, Kam Kiu filed a request ("Scope Ruling Request") advocating its position that the imported articles at issue (to which Kam Kiu refers as the "Subparts") are not

within the scope of the Orders.  *See Letter Requesting a Scope Ruling Regarding Subparts for Metal Bushings for Automotive Vehicles* (Admin.R.Doc. No. 1) ("*Scope Ruling Request*").  Commerce issued the contested Scope Ruling on November 21, 2013, rejecting Kam Kiu's position and ruling that the Subparts are within the scope of the Orders.  *Final Scope Ruling on Kam Kiu's Subparts for Metal Bushings* (Admin.R.Doc. No. 12), *available at* http://enforcement.trade.gov/download/prc-ae/scope/34-Subparts-Metal-Bushings-23nov13.pdf (last visited Aug. 28, 2015) ("*Scope Ruling*").

Kam Kiu commenced this action on December 19, 2013.  Summons (Dec. 19, 2013), ECF No. 1; Compl. (Jan. 17, 2014), ECF No. 9.  Kam Kiu filed its motion for judgment on the agency record on June 10, 2014.  Pls.' R. 56.2 Mot. for J. on the Agency R. and Mem. of P. & A. in Supp. of Pl.'s Mot. J. Agency R., ECF No. 25 (conf.), 26 (public) ("Pl.'s Br.").  Defendant and defendant-intervenor responded on September 12, 2014.  Def.'s Resp. Pl.'s R. 56.2 Mot. J. Agency R., ECF No. 33 ("Def.'s Opp'n"); Def.-Int. Aluminum Extrusions Fair Trade Comm.'s Resp. Pl.'s R. 56.2 Mot. J. Agency R., ECF No. 34 ("Def.-intervenor's Opp'n").  On October 10, 2014, Kam Kiu filed a reply.  Reply Br. in Supp. of Pl.'s R. 56.2 Mot. J. Agency R., ECF No. 36 ("Pl.'s Reply").

## II. DISCUSSION

The court exercises jurisdiction according to section 201 of the Customs Courts Act of 1980, under which the court has exclusive jurisdiction of any civil action "commenced under section 516A of the Tariff Act of 1930, as amended." 28 U.S.C. § 1581(c).[1]  Section 516A provides for judicial review of a "determination . . . as to whether a particular type of

---

[1] All statutory citations herein are to the 2012 edition of the United States Code and all regulatory citations herein are to the 2012 edition of the Code of Federal Regulations.

merchandise is within the class or kind of merchandise described in an existing . . . antidumping or countervailing duty order." 19 U.S.C. § 1516a(a)(2)(B)(vi) (2012).  In reviewing the contested Scope Ruling, the court will hold unlawful any finding, conclusion, or determination that is not supported by substantial evidence on the record or that is otherwise not in accordance with law.  *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

As described in the Scope Ruling Request, the elastomeric aluminum bushings produced from the imported Subparts are used in automobile suspension systems, in which they reduce vibrations and control movements of mechanical parts.  *Scope Ruling Request* 4.  The finished Subparts are manufactured "in various sizes and shapes, each designed for a particular automobile model," *id*., and are produced from aluminum billets that have been subjected to an extrusion process, *id*. at 5, 12.  After importation, the aluminum components are grit-blasted to clean the surface, coated with a paint primer, and top-coated with adhesive paint to facilitate attachment to a rubber filler that is added between the Subparts in the assembly of a finished bushing.  *Id*.  An illustration attached as an exhibit to the Scope Ruling Request shows a bushing consisting of an inner and an outer metal part, both basically of cylindrical shape, joined together by the rubber filler.  *Id.* at Ex. 8.

The court's analysis begins, as it must, with the scope language of the Orders.  Here, the antidumping duty order and the countervailing duty order contain the same scope language.  The Orders apply to "aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents)."  *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653.

In the Scope Ruling, Commerce found as a fact that the Subparts "are produced from aluminum billets, of aluminum alloy covered by the scope, through an extrusion process." *Scope Ruling* 5 (footnote omitted). The finding that the Subparts were made from aluminum extrusions is supported by the record and, in particular, by the Scope Ruling Request itself. *Scope Ruling Request* 5. Record evidence also supports the finding that the Subparts were made from an alloy covered by the scope language. *Scope Ruling Request* Ex. 4 (June 17, 2015) (Conf. Admin.R.Doc. No. 2-3); *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653-54.

The Scope Ruling Request took the position that the Subparts "are not aluminum extrusions, but rather are subparts of metal bushings for automotive vehicles, a final finished good exported to the U.S. to be used only in the particular motor vehicles for which each subpart is specifically manufactured." *Id*. at 6. It further argued that the Subparts "are finished components that require no further fabrication and therefore are not encompassed by the Orders." *Id*. at 4. The Orders, however, define the term "aluminum extrusions" broadly. Although the phrase "aluminum extrusions which are shapes and forms" might by itself be construed to mean only extrusions manufactured in basic shapes and forms, other scope language in the Orders clarifies that such a construction was not intended. The scope language provides expressly that the covered "[a]luminum extrusions may also be fabricated, i.e., prepared for assembly," and that "[s]uch operations would include, but are not limited to, extrusions that are cut-to-length, machined, drilled, punched, notched, bent, stretched, knurled, swedged, mitered, chamfered, threaded, and spun." *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,654. The scope language further clarifies that "[s]ubject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation . . ."

and that "[s]uch parts that otherwise meet the definition of aluminum extrusions are included in the scope." *AD Order*, 76 Fed. Reg. at 30,650-51; *CVD Order*, 76 Fed. Reg. at 30,654. Under the scope language construed as a whole, fabrication performed on an aluminum extrusion to produce a finished component ready for assembly does not result in the exclusion of that component from the scope of the Orders merely because no further machining or other further fabrication is required prior to assembly of the finished good. Commerce, therefore, was correct in rejecting these arguments upon issuing the Scope Ruling. *Final Scope Ruling* 8-9. The scope language also contains various exclusions, but none of these exclusions describes the Subparts. *See AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

As the Court of Appeals for the Federal Circuit has instructed, "[s]cope orders may be interpreted as including subject merchandise only if they contain language that specifically includes the subject merchandise or may be reasonably interpreted to include it." *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1089 (Fed. Cir. 2002) ("*Duferco Steel*"). The Final Scope Ruling satisfies this requirement. Moreover, "merchandise facially covered by an order may not be *excluded* from the scope of the order unless the order can reasonably be interpreted so as to exclude it." *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1301 (Fed. Cir. 2013), *reh'g denied* (Nov. 7, 2013) ("*Mid Continent Nail*"). Here, the Subparts are "aluminum extrusions" within the meaning of the general scope language of the Orders that do not qualify for any of the specific exclusions that also are set forth in the scope language. The court, therefore, must deny plaintiff's motion. Plaintiffs raise various arguments in support of their motion, in none of which does the court find merit.

Plaintiffs argue, first, that the Subparts satisfy the requirements for what plaintiffs describe as the "finished goods" exclusion in the Orders. Pls.' Br. 8. The Orders provide that

"[t]he scope . . . excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry . . . ." *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654. Because the merchandise in question is not imported in an assembled form, this exclusion is inapplicable.

Plaintiffs argue, next, that the Subparts qualify for what plaintiffs term the "finished goods kit" exclusion in the Orders. Pls.' Br. 8-9. The Orders provide that "[t]he scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a 'finished goods kit.'" *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654. The Orders explain that "[a] finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication . . . and is assembled 'as is' into a finished product." *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654. This exclusion is inapplicable. According to the uncontested facts as set forth in the Scope Ruling Request and as apparent from the illustrations in the exhibits thereto, the automotive bushings consist of an inner and outer component (i.e., the imported aluminum-alloy components) that, after importation, are prepped for assembly and joined using a rubber filler. *See Scope Ruling Request* 5, Ex. 7, 8. The inner and outer aluminum-alloy components, therefore, are insufficient to produce a finished bushing. The finished goods kit exclusion, therefore, does not describe the merchandise in the form in which it is imported.

Notwithstanding the express limitations on the finished goods and finished goods kit exclusions, plaintiffs argue that one or both exclusions apply because "the subparts at issue are custom manufactured with discrete part numbers that are assembled to form a metal bushing" and because "[n]o additional finishing or fabrication of the parts is necessary to create the

finished product—a metal bushing for automobile suspension systems." Pls.' Br. 13.  This argument fails to confront the problem that, as imported, the merchandise is neither an assembled good nor a kit containing all the components for assembly "as is" into a finished good.  Citing certain past scope rulings by Commerce, plaintiffs argue, further, that:

> [W]hile Kam Kiu's subparts do not include the rubber filler at the time of importation, this part does not need to be included at the time of importation for the finished goods kit to be complete, as Commerce has made clear in established interpretation of the scope language explained in the Drapery Rail Kits Ruling, the Solar Panel Mounting Systems Ruling, and Banner Stands Ruling.

*Id*.  Even were the court to assume, *arguendo*, that the cited rulings are analogous to this case, plaintiffs' argument would fail to overcome the effect of the plain meaning of the scope language of the Orders.[2]

---

[2] Moreover, the cited rulings are not analogous.  *See* Mem. of P. & A. in Supp. of Pl.'s Mot. J. Agency R. 11-12, 18, 21 (June 10, 2014), ECF No. 25 (conf.), 26 (public) ("Pl.'s Br."); *Final Scope Ruling on Clenergy (Xiamen) Technology's Solar Panel Mounting Systems* (Oct. 31, 2012), *available at* http://enforcement.trade.gov/download/prc-ae/scope/21-Clenergy-Solar-Panel-Mounting-Systems-20121031.pdf (last visited Aug. 28, 2015) ("*Solar Panel Mounting Systems*"); *Final Scope Ruling on Banner Stands & Back Wall Kits* (Oct. 19, 2011), *available at* http://enforcement.trade.gov/download/prc-ae/scope/02-Banner-stands-20111019.pdf (last visited Aug. 28, 2015) ("*Banner Stands*"); *Final Scope Ruling on Traffic Brick Network, LLC's Event Decor Parts & Kits* (Dec. 3, 2012), *available at* http://enforcement.trade.gov/download/prc-ae/scope/35-event-decor-parts-kits-5dec13.pdf (last visited Aug. 28, 2015) ("*Event Decor Parts*"); *Final Results of Redetermination Pursuant to Ct. Remand, Rowley Co. v. United States* (Feb. 27, 2013), *available at* http://enforcement.trade.gov/remands/12-00055.pdf (last visited Aug. 28, 2015) ("*Drapery Rail Kits Ruling*"), *aff'd Rowley Co. v. United States*, Consol. (Ct. No. 12-00055) (May 23, 2013). These prior scope rulings all involved inessential, interchangeable parts added after importation by the consumer. *Compare Final Scope Ruling* 9 (stating that Kam Kiu's subparts require, *inter alia*, the addition of "a rubber filler before the subparts are ready to be assembled into a complete metal bushing"), *with, e.g., Banner Stands* 10 (stating that "the banner stands and back wall kits at issue are designed to incorporate interchangeable graphic materials that can change with users' needs" and that "it would be unreasonable to require that the products at issue must be accompanied with affixed graphical material that cannot be removed or altered at a later date"). The term used by Kam Kiu to describe its merchandise in its Scope Ruling Request and subsequent briefing—"elastomeric metal bushing"—indicates that the rubber filler is an essential component.  *See Letter Requesting a Scope Ruling Regarding Subparts for Metal Bushings for*
(continued . . .)

Case 1:13-cv-00403-TCS   Document 40   Filed 09/03/15   Page 9 of 11
Court No. 13-00403                                                                                              Page 9

Plaintiffs argue that the additional preparation of the Subparts prior to assembly does not constitute further finishing or fabrication because the Subparts, as imported, fall under the finished good" or "finished goods kit" exceptions as understood in the "subassemblies test" adopted in the Department's prior scope determinations. Pl.'s Br. 9. Plaintiff states that Commerce discussed the "subassemblies test" in the initiation and preliminary scope ruling on Side Mount Valve Controls ("SMVCs") and "held that 'subassemblies' may be excluded from the scope of the Aluminum Extrusions Orders." Pl.'s Br. 9; *see Initiation & Prelim. Scope Ruling on Side Mount Valve Controls* 7 (Sept. 24, 2012) ("*SMVCs Scope Ruling*"), Attach. 2 to *Letter to the File re: Transmittal of Scope Determinations* (Nov. 21, 2013) (Admin.R.Doc. No. 11); *Final Scope Ruling on Side Mount Valve Controls* (Oct. 26, 2012), *available at* http://enforcement.trade.gov/download/prc-ae/scope/27-Innovative%20Controls-Side-Mount-Valve-Controls-20121026.pdf (last visited Aug. 28, 2015) (adopting the unchanged preliminary scope ruling). The issue in the SMVCs ruling pertained in part to the scope language on subassemblies, which provides that "[t]he scope includes the aluminum extrusion components that are attached (e.g., by welding or fasteners) to form subassemblies, i.e., partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below." *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654. In its scope ruling on SMVCs, Commerce found that a side mount valve control package—which after importation was to be assembled to form a complete control valve for installation onto a fire truck—qualified for exclusion as a finished good kit because the exclusion should not be interpreted to require all

---

(. . . continued)
*Automotive Vehicles* 1 (June 25, 2013) (Admin.R.Doc. No. 1) ("*Scope Ruling Request*"); Pl.'s Br. 1; Pl.'s Reply 2. An "elastomer" is defined as "an elastic rubberlike substance (such as a synthetic rubber or a plastic having some of the physical properties of natural rubber)." "Elastomer" (n.), *Webster's Third New Int'l Dictionary*, Unabridged 730 (3d ed. 2002).

the parts necessary to assemble "the ultimate downstream product" (*i.e.,* the fire truck), as such an interpretation "may lead to absurd results." *SMVCs Scope Ruling* 7; *see also Final Scope Ruling* 7-8. Kam Kiu unsuccessfully attempts to analogize the merchandise at issue in that ruling to its own merchandise, claiming that both "the subparts for metal bushings and the subparts of SMVC are installed on larger parts (*i.e.*, the imported subpart valve controls are installed on fire trucks and the bushings are installed in motor vehicle suspension systems)." Pl.'s Br. 13. Plaintiffs' argument ignores the obvious distinction that the merchandise in SMVCs, as imported, was ready for assembly into a complete control valve, *SMVCs Scope Ruling* 2, whereas the Subparts required the addition of the essential rubber component. *SMVCs Scope Ruling* 7; *see also Final Scope Ruling* 7. For the same reason, plaintiffs are erroneous in relying on another Commerce scope ruling, the final scope ruling on Valeo's Automotive Heating and Cooling Systems ("Valeo"), Pls.' Br. 18, in which Commerce concluded that the merchandise at issue satisfied the requirements of the finished goods kit exclusion. *See Final Results of Redetermination Pursuant to Court Remand Aluminum Extrusions from the People's Republic of China Valeo, Inc.* (Feb. 13, 2013) ("*Valeo Scope Ruling*"), *aff'd Valeo, inc. v. United States* 9-11 (Ct. No. 12-00381) (May 14, 2013). The parts in the kit at issue in Valeo needed "no additional fabrication or finishing" and were therefore were "ready for assembly without any additional hardware or parts" at the time of importation. *Valeo Scope Ruling* 10.

Kam Kiu argues, further, that the tariff classification of the Subparts is evidence that these goods are outside the scope. *See* Pl.'s Br. 14-15. Kam Kiu suggests that the Subparts are classified under heading 8487, Harmonized Tariff Schedule of the United States ("HTSUS")— which is not among the classifications listed in the Orders—and therefore do not meet the plain language of the Orders. *Id.* at 14. However, the Orders provide that, while HTSUS

"subheadings are provided for convenience and customs purposes, the written description of the scope" is dispositive. *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

Kam Kiu's final argument is that Commerce erred in failing to apply the criteria set forth in 19 C.F.R. § 351.225(k)(2) of its regulations, which according to Kam Kiu "establish that subparts for metal bushings are not covered by the *Orders*." Pls.' Br. 24. As provided in subsection 351.225(k), the criteria set forth in paragraph (2) of the subsection apply only if the criteria of paragraph (1) of the subsection "are not dispositive." The criteria of paragraph (1) are "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary [of Commerce] (including prior scope determinations) and the [International Trade] Commission." 19 C.F.R. § 351.225(k)(1). Subsection (k) of the regulations must be interpreted in a way that is consistent with the principles set forth in *Duferco Steel*, 296 F.3d at 1089, and *Mid Continent Nail*, 725 F.3d at 1300, under which the scope language is the starting point of any scope analysis and under which a determination on scope must be based on a reasonable construction of that language. Here, the Department's determination that the Subparts are within the scope of the Orders is supported by a reasonable construction of the scope language in the Orders, and plaintiffs are unable to demonstrate the reasonableness of a contrary construction.

### III. CONCLUSION

The court must deny plaintiffs' motion for judgment on the agency record. Judgment will enter in accordance with this Opinion.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Chief Judge

Dated: September 3, 2015
      New York, New York